[No. 22325.   Department Two.   August 12, 1930.]

F. G. FISHER, *Respondent*, v. THORWALD BERG *et al.,*
*Appellants.*[1]

*Trumbull, Severyns & Trumbull,* for appellants.

*Wallace W. Mount* and *William J. Conniff,* for re-
spondent.

[1]Reported in 290 Pac. 984.

FULLERTON, J.—The respondent, Fisher, brought this action against the appellants, Berg, to recover on an assigned claim incurred for designing, constructing and installing a machine intended for use in splitting wooden blocks into suitable sizes for the manufacture of wood pulp. There was a trial by the court sitting with a jury, in which a verdict was returned in favor of the respondent for the sum of $2,800. A judgment was entered on the verdict, and it is from this judgment that the appeal before us is prosecuted.

The appellants make a number of assignments of error, but, as many of them raise the same question in different forms, they can be noticed under more general heads. It may be stated here also that, on almost every material fact, the evidence is flatly contradictory, but, as it was the privilege of the jury to determine the facts, we shall, in our recitals of the facts, accept that version of the evidence as true which is most favorable to the respondent's contentions, without noticing the contradictions.

Although not in the order in which the appellants present them, the first of the assigned errors to be noticed is that there is not sufficient evidence to justify the finding of the jury that the respondent is the real party in interest; that is, that he has a valid assignment of the claim on which he sues from the parties with whom the contract for constructing the splitting device was made, or from any party entitled to collect on the contract. The facts necessary to an understanding of the point involved are in substance these: In the year 1927, the appellant Thorwald Berg was a contractor under the Washington Pulp & Paper Corporation, engaged in cutting and loading for transportation pulp wood at Neah Bay; the timber being cut into four-foot lengths and then split into suit-

able sizes. The work of splitting the timber was done by hand labor.

During the same year, one Frank McDonald and one C. E. Carpenter were copartners, owning and operating machine shops, one at Port Angeles and the other at Seattle. In the early summer of the year named, Berg came to the machine shop at Port Angeles and inquired of the copartners whether they could construct a machine that would split the blocks by mechanical power. A machine used for that purpose was in operation at a nearby plant, and this was visited by the parties. After visiting the machine, the appellant expressed his approval of it and his desire for a machine built after that design.

The copartners then visited the appellant's place of work, examined the locality, the timber and the surroundings, and then undertook to design a machine which would answer the appellant's purpose. Specifications and blue prints were prepared for such a machine and submitted to Berg. These he approved, and a verbal contract was entered into for its construction. The preliminary work took up the greater part of the summer and fall, and the contract for its construction was not entered into until sometime in November, 1927. In the meantime, the copartners had reorganized their business, by forming a corporation and turning over to the corporation their partnership business and property. The corporation thereafter constructed the machine, and the assignment to the respondent of the claim for its construction was made by the corporation.

It is first claimed that there is no evidence that the corporation had any interest in the contract. But the evidence is that it actually constructed the machine, and that all of the interest which the copartners had in the contract was turned over to it. The evidence is

oral, it is true, but the evidence was ample to show the facts, and since this was not the material part of the cause of action, but in the nature of a collateral matter, it could be shown by parol. There was a formal assignment in writing made of the contract by the corporation founded upon a valuable consideration, and this, we think, vested in the respondent the beneficial interest therein.

The appellants make the further contention that the contract was one that was not assignable by the copartners because of its nature. It is argued that the contract was entered into with them because of their skill and ability as mechanics and their known reliability as business men, and because of the trust and confidence the appellants had in them, and that they could not assign the contract of construction to a third party so as to make the appellants liable to such third party. But the principle sought to be invoked is, we think, inapplicable to the facts here presented. In this instance, the copartners, as members and agents of the corporation, superintended the construction of the machine and the selection and adjustment of the materials, and it is hardly possible that they could have done more had the actual work been done in their shops while they were operating as a copartnership. The appellants cite and rely upon the case of *Bleecker v. Satsop R. Co.*, 3 Wash. 77, 27 Pac. 1073, in support of this branch of their case, but the facts of the case differ so widely from the facts of the present case that we cannot think it in point. The facts of the case are too complicated to be even briefly stated, but the court did say that an agent employed to do a particular act could not usually delegate the duty to a subagent and thus bind the principal for a wrongful act committed in its performance. But, after so saying, it further said that it recognized ". . . the doctrine that no inflexible

rule can be applied to all cases, but that each case depends largely upon the circumstances surrounding it, . . ." We think it can be fairly questioned whether the present case presents the situation there involved, but if it does so, it is sufficiently differentiated by the circumstances under which the work was performed. See *King v. West Coast Grocery Co.*, 72 Wash. 132, 129 Pac. 1081.

The next contention to be noticed is that the trial court erred in not sustaining some one of the challenges the appellants interposed to the sufficiency of the evidence. We shall not, however, review the evidence in detail. We have, because of the earnestness with which the appellants' counsel present the contention, examined the evidence both from the abstracts presented by the parties and from the original transcript, and, while we are convinced that the jury could well have found for the other side, we find substantial evidence on every material matter necessary to be found by the jury in order to sustain their verdict. This is as far as we have the right to inquire. The case was one triable by jury, in which their findings on contradictory evidence are conclusive upon us.

Of the errors thought to require a new trial, the first relates to the admission of evidence. It is objected that the court erred in admitting in evidence the assignment of the claim to the respondent. But this question we have perhaps already sufficiently noticed. It could be objectionable only on the theory that the corporation executing it had no interest in the contract, and could pass nothing to the respondent by assignment to him. But, as we read the evidence, the jury were entitled to take and did take the other view. The assignment therefore was material as a part of the respondent's chain of title.

The respondent, on the demand of the appel-

lants, furnished a bill of particulars in which was set forth the materials, and their cost, which were used in the construction of the splitting machine. When the witness Carpenter was on the witness stand, he was asked concerning these costs, and answered with reference to some of them that they were charged to the appellants at their actual cost without adding the profit-charge customary and usual in such cases. He was asked the reason for omitting the profit-charge, to which an objection was interposed and sustained by the court. Counsel then propounded the following question:

"Did you have any conversation with Mr. Berg in regard to getting other work and the effect that that would have on the price of this splitter?"

An objection was interposed to the question on the ground of immateriality, which the court overruled. The witness then answered that he did have such a conversation, and stated what the conversation was; stating in substance that Berg said to him that, if the splitting machine was successful, he and his copartner would have sufficient work to keep both of their shops busy. Conceding that the subject-matter of the inquiry was immaterial, we cannot conceive that it was of sufficient importance to mislead the jury, or require a new trial.

Certain evidence offered by the respondent in rebuttal was also admitted over objection. But this requires no special notice. It was not of such materiality as to require a new trial, even if it was not strictly evidence in rebuttal.

The court, among others, gave to the jury the following instruction:

"The court instructs the jury that where no price is expressly agreed upon between the parties, or where the seller has not put a specific price on the goods when

he sends them to the buyer pursuant to an order, the price is to be determined ordinarily by the market value or reasonable value of the goods.''

If we have correctly gathered the appellants' objection to the instruction, they do not question it as an abstract principle of law, but question rather its applicability to the facts of the case. But we do not think it vulnerable to the objection made against it. The contract for the construction of the splitting machine was oral, and there was, as is not unusual in such instances, a bitter dispute between the parties as to its terms. The trial court in its instructions undertook to cover every possible phase of the evidence, and, as we read the record, there was a possible condition to which the instruction would be applicable.

The appellants submitted two requested instructions which the court did not give in the language of the requests. But we find their subject-matter included in the instructions given by the court, in language to which no valid objection can be taken. This was a sufficient compliance with the rule. Under the practice in this state, the court may charge the jury in language of its own choosing, even though requests may be made for instructions in language proper in form and substance. The instructions given to the jury in this instance evidence care in their preparation, and fully cover the issues. They were fair and impartial, and we cannot conceive that either party could have been prejudiced by them.

Our view of the record requires an affirmance of the judgment, and it will be so ordered.

MITCHELL, C. J., PARKER, MAIN, and HOLCOMB, JJ., concur.